

RICHARD J. DURBIN, ILLINOIS, CHAIR

PATRICK J. LEAHY, VERMONT                CHARLES E. GRASSLEY, IOWA
DIANNE FEINSTEIN, CALIFORNIA             LINDSEY O. GRAHAM, SOUTH CAROLINA
SHELDON WHITEHOUSE, RHODE ISLAND         JOHN CORNYN, TEXAS
AMY KLOBUCHAR, MINNESOTA                 MICHAEL S. LEE, UTAH
CHRISTOPHER A. COONS, DELAWARE           TED CRUZ, TEXAS
RICHARD BLUMENTHAL, CONNECTICUT          BEN SASSE, NEBRASKA
MAZIE K. HIRONO, HAWAII                  JOSHUA D. HAWLEY, MISSOURI
CORY A. BOOKER, NEW JERSEY               TOM COTTON, ARKANSAS
ALEX PADILLA, CALIFORNIA                 JOHN KENNEDY, LOUISIANA
JON OSSOFF, GEORGIA                      THOM TILLIS, NORTH CAROLINA
                                         MARSHA BLACKBURN, TENNESSEE

**United States Senate**

COMMITTEE ON THE JUDICIARY

WASHINGTON, DC 20510–6275

May 5, 2021

The Honorable Merrick Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Garland:

We respectfully request that you direct the Bureau of Prisons (BOP) to expeditiously revise the proposed rule published on November 25, 2020, regarding earned time credits authorized by the First Step Act of 2018 (FSA). As proposed, the rule severely limits the incentive structure designed to increase program participation and would undercut the effectiveness of the FSA. We ask that you reevaluate and amend the rule consistent with the statute's goals of incentivizing and increasing program participation to reduce recidivism.

The proposed rule undermines the FSA's incentive structure in several respects. First, by defining a day as eight hours of programming the rule greatly restricts the ability to earn credits. Under the FSA, eligible inmates "shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming [EBRR] or productive activities [PAs]." While not statutorily defined, the plain meaning of a day of participation is every calendar day during which a person successfully participates in an EBRR or PA, with the length of participation determined by the program. Instead, the proposed rule defines a day as "one eight-hour period" of a completed EBRR or PA. Using this definition, an inmate who participates in a program one hour a day for eight days would earn just one "day" of participation under the FSA. Given the limited programs offered and the duration and frequency of programs, earning enough time credits to meaningfully reduce prison time would be nearly impossible under this definition.

Second, the proposed rule allows credits to be earned only for programs that were assigned and completed after January 15, 2020, more than two years after the FSA's date of enactment. The FSA does not require BOP to limit earned time credits to completion of *assigned* programming. BOP's inclusion of this limitation in the proposed rule is particularly troublesome because BOP has not developed an effective needs assessment, as required by the FSA. Under the proposed rule, inmates would not be rewarded for self-identifying needs and voluntarily participating in programming. The proposed rule also, without authority or explanation, prohibits credits for programs completed before January 15, 2020, when the FSA allows for credits based on all programming completed after the statute's enactment on December 21, 2018.

<strong>Exhibit A</strong>

Third, the FSA directs that all eligible federal prisoners in BOP custody shall earn credits for program participation, but the proposed rule would exclude prisoners in residential reentry centers (RRCs) or home detention. Because prisoners in RRCs and home detention are in BOP custody, the rule is contrary to the FSA. In fact, the FSA specifically anticipated that prisoners on home detention would continue to participate in programming by listing program participation as one of a few authorized reasons prisoners may leave home while on detention.

Finally, we are concerned that the proposed rule's penalties are unduly harsh. The rule proposes that inmates may lose earned time credits "for violations of prison rules, or requirements and/or rules of an [EBRR or PA]," applying the same procedures used for loss of good time credits. Especially when combined with the time required to earn credits under the proposed rule, the penalty for violations would be too severe. For example, one unexcused absence from a work assignment could result in the loss of 30 days of earned credits, although earning those credits would require completing 720 hours of programming. The rule also imposes penalties for violations of program requirements, rather than just violations of "prison rules or [EBRR or PA] rules," as the FSA requires, suggesting that failure to fulfill the requirements of a program not only could result not only in a failure to earn time credits for participation, but also the loss of credits previously earned.

While losing hard-earned credits would be easy, the rule makes restoring credits too difficult. The FSA simply requires "a procedure to restore time credits that a prisoner lost as a result of a rule violation, based on the prisoner's individual progress." However, the proposed rule would only allow for restoration after "clear conduct for at least four consecutive risk and needs assessments." These assessments may only be completed annually, so it could take a prisoner at least four years to restore lost credits, longer than the average sentence.

For these reasons, we ask that you direct BOP to expeditiously revise the proposed rule consistent with the comments above. Establishing robust programming and a fair system to earn time credits is critical to meeting the FSA's goal of reducing recidivism.

Thank you for your time and consideration. We look forward to your prompt response.

Sincerely,

Richard J. Durbin
Chair
U.S. Senate Committee on the Judiciary

Charles E. Grassley
Ranking Member
U.S. Senate Committee on the Judiciary