Exhibit B

RICHARD J. DURBIN, ILLINOIS, CHAIR

PATRICK J. LEAHY, VERMONT
DIANNE FEINSTEIN, CALIFORNIA
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT
MAZIE K. HIRONO, HAWAII
CORY A. BOOKER, NEW JERSEY
ALEX PADILLA, CALIFORNIA
JON OSSOFF, GEORGIA

CHARLES E. GRASSLEY, IOWA
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
BEN SASSE, NEBRASKA
JOSHUA D. HAWLEY, MISSOURI
TOM COTTON, ARKANSAS
JOHN KENNEDY, LOUISIANA
THOM TILLIS, NORTH CAROLINA
MARSHA BLACKBURN, TENNESSEE

United States Senate
COMMITTEE ON THE JUDICIARY
WASHINGTON, DC 20510-6275

November 16, 2022

The Honorable Merrick Garland
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

Dear Attorney General Garland:

    We write regarding continued failures by the Federal Bureau of Prisons (BOP) to adequately implement the Earned Time Credit (ETC) provisions of the bipartisan First Step Act of 2018 (FSA). The FSA enacted critical reforms to promote public safety and make our criminal justice system fairer. A fair system for awarding time credits to those who participate in recidivism-reduction programming is necessary to meet the FSA's goal of reducing recidivism and making our communities safer. Unfortunately, almost four years after the FSA was signed into law, implementation of its ETC provisions continues to fall short.

    As an initial matter, the ETC implementation process has been characterized by excessive delays. It took the Department until January 2022, three years after the enactment of the FSA, to issue a final rule on ETCs.[1] We appreciate that the final rule, reflecting Congress's intent when we enacted the FSA, is a significant step toward achieving the First Step Act's goal of helping federal prisoners to successfully reintegrate into communities.[2]

    However, during that period of delay in the rulemaking process, individuals like Cecilia Cardenas, who recently testified before the Judiciary Committee, were unable to receive the benefit they earned for participating in recidivism reduction programs and productive activities. By the time Ms. Cardenas received her credits in January 2022, she had served 11 months longer than she should have. After DOJ announced the final rule, significant numbers of adults in custody again waited months to receive the benefit they were owed as BOP developed a system for automation of ETC calculations.[3] Despite BOP Director Collette Peters' testimony that

---

[1] 28 C.F.R. 523 (2022); 28 C.F.R. 541 (2022) https://www.federalregister.gov/documents/2022/01/19/2022-00918/fsa-time-credits.

[2] Durbin, Grassley: *New Justice Department Rule Will Implement First Step Act's Earned Time Credits Program and Incentive Rehabilitation*, Jan. 13, 2022 https://www.durbin.senate.gov/newsroom/press-releases/durbin-grassley-new-justice-department-rule-will-implements-first-step-acts-earned-time-credits-program-and-incentive-rehabilitation.

[3] Erik Ortiz, *Thousands of federal inmates still await early release under Trump-era First Step Act*, NBC News, July 3, 2022 https://www.nbcnews.com/news/us-news/thousands-federal-inmates-still-await-early-release-trump-era-first-st-rcna35162.

BOP's automated system for calculating ETCs went live at the end of August, many federal prisoners did not see updates to their release dates until last month.[4]

We bring this to your attention to emphasize the need to ensure the swift and consistent application of ETCs to federal prisoner accounts without further delay. Although BOP has struggled to develop and implement consistent and fair policies to this effect, enough time has passed that further delay cannot be excused.

There are several additional concerns regarding ETCs that require your attention. First, according to recent reports, BOP's new automated system for calculating ETCs initially rescinded previously-awarded supervised release time for certain people in custody. This appears, at least in part, to be a result of BOP retroactively enforcing a policy that federal prisoners were ineligible to earn ETCs between January 2020 and January 2022 if they failed to complete "any portion" of the FSA needs assessment, and it appears to disregard the completion of anti-recidivism programming.[5]

On October 14, BOP issued corrective guidance which indicates that individuals already in community placements or within two months of a community placement who had previously received ETCs would not see a change in release date based on the automated calculation.[6] This October guidance appears to acknowledge the lack of fairness in rescinding ETCs that have been earned, but it is unclear why the arbitrary cutoff of two months was selected.

Critically, BOP did not issue a formal program statement on the FSA needs assessment until June 25, 2021, which means that federal prisoners could not have been aware of the requirement of completing the needs assessment from January of 2020 through June of 2021.[7] BOP itself reports that nearly half of staff interviewed for a March report indicated no familiarity with, or declined comment on, the needs assessment process and FSA incentives policies.[8] Several of the FSA needs assessment measures rely on self-report surveys, and BOP reports that completion rates for these surveys were low as compared to other assessments.[9] The primary purpose of the provision of ETCs is to encourage federal prisoners to improve themselves through anti-recidivism and work programs. If DOJ takes away previously earned ETCs based on incomplete needs assessment surveys where impacted individuals could not have known that the completion of these surveys would become a retroactive requirement that would be used against them, the incentive effects of the FSA will be lost. We strongly encourage you to

---

[4] Statement of Colette S. Peters Director Federal Bureau of Prisons Before the Committee on the Judiciary United States Senate For a Hearing on "Oversight of the Federal Bureau of Prisons," Presented September 29, 2022, at 5 https://www.bop.gov/resources/news/pdfs/dir_statement_20220929_hearing.pdf; Walter Pavlo, *First Appearance by Bureau of Prisons Director Falls Shorts on Facts*, Forbes, October 1, 2022 https://www.forbes.com/sites/walterpavlo/2022/10/01/first-appearance-by-bureau-of-prisons-director-falls-shorts-on-facts/?sh=57e4c0f87a9b.
[5] *Inmate Message- Federal Time Credits (FTC) Auto Calculation Launches* https://lisa-legalinfo.com/wp-content/uploads/2022/09/ETC-Memo-unofficial-copy220912.pdf.
[6] *Residential Reentry Center & Home Confinement Resident Message Auto-Calculation of Federal Time Credits (FTC)* dated October 14, 2022 https://prisonprofessors.com/wp-content/uploads/2022/10/10-14-Memo.pdf.
[7] U.S. Dep't. of Just., Fed. Bureau of Prisons, Program Statement § 5400.01 (2021) https://www.bop.gov/policy/progstat/5400.01.pdf.
[8] U.S. Dep't of Justice, *Federal Bureau of Prisons, First Step Act: Initial Review of the SPARC-13 Needs Assessment System* at 14 (2022), https://www.bop.gov/inmates/fsa/docs/bop_fsa_needs_validation_report_2021.pdf.
[9] First Step Act Annual Report at 23 (April 2022).



reconsider this policy, and to put in place policies that do not affect federal prisoners' incentive to participate in valuable programming.

Second, BOP has circulated guidance to its staff that "[e]ligible inmates will continue to earn [ETCs] toward early release until they have accumulated 365 days *or are 18 months from their release date*, whichever happens first. At this point, the release date becomes fixed and all additional [ETCs] are applied toward [an earlier transfer to a Residential Reentry Center or home confinement] [emphasis added]."[10] This "18-month rule" is not supported by the FSA, nor does it further the FSA's goal of incentivizing recidivism reduction programming for returning persons. Moreover, under this guidance, any federal prisoner with a sentence of 18 months or less would be unable to earn an earlier release date. BOP should therefore not implement an arbitrary cutoff on earning ETCs toward release. Instead, BOP should instead create a system of awarding credits that allows all eligible individuals to receive the full benefit of successfully participating in recidivism reduction programming and productive activities in order to ensure that these programs retain appropriate incentives, as intended by the FSA.

Third, the improvement of the PATTERN risk assessment tool should continue to remain a priority for BOP. As we previously stated following DOJ's release of the April 2022 report on the FSA, "[w]e are pleased to see DOJ heed our calls and make changes to the risk assessment tool, which should help address racial disparities and inaccuracies in previous versions."[11] However, until PATTERN is able to address various unjustified disparities that have arisen, BOP should make full use of its other tools to ensure that federal prisoners are able to have a chance to benefit from the FSA and reintegrate into our communities. The National Sentencing Resource Counsel and the Federal Public and Community Defenders recently raised a concern that BOP is reportedly not using the "warden exception" to permit eligible individuals who are ineligible under PATTERN to transfer to prerelease custody.[12] The FSA provides that a federal prisoner may be transferred to prerelease custody after a warden's determination that "the prisoner would not be a danger to society if transferred to prerelease custody or supervised release; the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and the prisoner is unlikely to recidivate."[13] This exception is an important tool to mitigate the flaws and racial disparities that may occur in PATTERN, and BOP must use it appropriately.[14]

Finally, advocates report that BOP currently provides no mechanism to allow people on prerelease custody to earn ETCs. The FSA does not prohibit earning credits while in prerelease custody, and continued participation in recidivism reduction programming and productive activities during prerelease custody may further contribute to an individual's success upon

---

[10] Walter Pavlo, *Bureau of Prisons' Interpretation of First Step Act Will Leave Thousands of Inmates Incarcerated*, Forbes, Sept. 9, 2022 https://www.forbes.com/sites/walterpavlo/2022/09/09/bureau-of-prisons-interpretation-of-first-step-act-will-leave-thousands-of-inmates-incarcerated/?sh=7cb57cdc2f94.
[11] *Durbin, Grassley Statement On First Step Act Annual Report*, Apr. 22, 2022 https://www.durbin.senate.gov/newsroom/press-releases/durbin-grassley-statement-on-first-step-act-annual-report.
[12] *See* Statement of Patricia L. Richman, National Sentencing Resource Counsel and Federal Public and Community Defenders, BOP Listening Session, October 5, 2022 at 1; First Step Act Annual Report at 14 (April 2022) (stating no individual "whose risk level exceeds that associated with the "low" category for the violent tool will be eligible to use time credits towards transfer to prerelease custody or supervised release.")
[13] 18 U.S.C. § 3624 (g)(1)(D)(i)(II).
[14] *See* First Step Act Annual Report at 11-12 (April 2022).

release. In its final rule on ETCs, BOP stated, "the Bureau agrees that inmates in prerelease custody—whether in residential reentry center (RRC) or home confinement—are eligible to earn FSA Time Credits under 18 U.S.C. 3632(d)(4)(A), which they could presumably apply, under 18 U.S.C. 3632(d)(4)(C), toward transfer to supervised release."[15] BOP stated that the practical effect of allowing eligible incarcerated people to earn ETCs while in prerelease custody would be limited; however, because eligible incarcerated people who satisfy the criteria in 3624(g) would be transferred to supervised release to the extent possible, a fact belied by BOP's "18- month rule." BOP should issue guidance to ensure that eligible individuals who wish to participate in recidivism reduction programming while on prerelease custody are able to obtain appropriate credit.

To better understand the scope of DOJ's efforts to implement ETCs, we also ask that DOJ provide the following information no later than December 7, 2022:

1. How many people in BOP were awarded ETCs *before* the auto calculation system went live? Of that number, how many people lost ETCs *after* the auto calculation system went live?
2. How will BOP address ETCs for individuals who have lost credits or been denied credits for failure to complete needs assessment surveys?
3. In light of the October 14 memo, how is BOP ensuring that people within the two-month window have had their original award of credits restored? Is there any plan to expedite review of challenges to ETC calculations that implicate the October 14 memo?
4. Who in BOP is responsible for determining if a person is or is not eligible to earn time credits under 18 U.S.C. Section 3632(d)(4)(D)? Are staff who are responsible for making eligibility determinations given special training on that task?
5. Please verify whether BOP is making adequate use of the warden exception.

In the past two years, the Justice Department has made important strides that demonstrate its commitment to successful implementation of the FSA. For the FSA to realize its full potential, the implementation of ETCs requires dramatic improvement without further delay. Now is the time to work together to ensure that the goals of the FSA are fully met. We thank you for your prompt attention to this matter.

Sincerely,

Richard J. Durbin
Chair

Charles E. Grassley
Ranking Member

---

[15] 28 C.F.R. 523 (2022); 28 C.F.R. 541 (2022) https://www.federalregister.gov/documents/2022/01/19/2022-00918/fsa-time-credits.